[No. 52978-7. En Banc. April 16, 1987.]

SAN TELMO ASSOCIATES, ET AL, *Respondents,* v.
THE CITY OF SEATTLE, *Appellant.*

*Douglas N. Jewett, City Attorney,* and *James E. Fearn, Jr., Assistant,* for appellant.

*Foster, Pepper & Riviera, G. Richard Hill,* and *Michael K. Vaska,* for respondents.

*Steve Fredrickson, Janis P. Bianchi, Katherine R. McFaul, Susan J. Taoka,* and *Barbara Wechsler,* amici curiae for appellant.

DORE, J.—The City of Seattle challenges a trial court's order invalidating a Seattle ordinance restricting the demolition of low income housing. We affirm the trial court as we believe the ordinance imposes an unconstitutional tax on a limited number of property owners.

## FACTS

In recent years, the supply of low income housing has steadily decreased in the Seattle downtown region. Seattle Municipal Code 22.210.020(A)(2). The City has attempted to halt this trend by passing ordinances restricting the right of owners of low income housing to convert this residential property to nonresidential use. In 1980, the City adopted an ordinance which imposed a fee on low income housing owners if they attempted such a conversion. In 1983, however, San Telmo Associates, a limited partnership, successfully challenged this ordinance in King County Superior

Court as an invalid tax pursuant to RCW 82.02.020.

The City did not appeal the Superior Court ruling, and instead, enacted current SMC 22.210 (hereinafter the Housing Preservation Ordinance) encompassing the same subject matter. This ordinance differs slightly from the invalidated ordinance. The current ordinance requires that in most cases, if an owner decides to demolish low income residential housing units and convert the property to non-residential use, the owner must obtain a housing demolition license. SMC 22.210.050. This license will be granted only if the owner gives the current tenants relocation notice and assistance and replaces a specified percentage of the low income housing with other suitable housing. SMC 22.210-.050(C), (D). In lieu of providing replacement housing, the owner is given the option to contribute to the low income housing replacement fund. SMC 22.210.120(A)(4).

San Telmo and another limited partnership, Twelve Hundred Five Associates, challenge this ordinance. San Telmo formerly owned some low income housing in downtown Seattle. After successfully challenging the first housing ordinance, it sold the property by a real estate contract to Twelve Hundred Five Associates. Both limited partnerships bring this action to invalidate the second ordinance. Both San Telmo and the City moved for summary judgment, and the King County trial court granted San Telmo's motion and denied the City's motion. The City appeals here.

## COLLATERAL ESTOPPEL

San Telmo argues that because the first Housing Preservation Ordinance and the second ordinance are virtually identical, and the City failed to appeal the order invalidating the first ordinance, the City should be precluded from arguing for the validity of the second ordinance. San Telmo, in essence, is arguing that the City is collaterally estopped from relitigating this issue.

■ Collateral estoppel is appropriate only when the following four factors are present: (1) the issue decided in the prior adjudication is identical with the issue now before the

court, (2) there was a final judgment on the merits, (3) the party against whom the plea is now asserted is a party or is in privity with a party to the prior adjudication, and (4) the application of the collateral estoppel doctrine will not work an injustice against the party against whom the doctrine is applied. *Rains v. State,* 100 Wn.2d 660, 665, 674 P.2d 165 (1983). In this case, the first requirement is not met. There is no indication that the City attempted to adopt the second ordinance merely to avoid the trial court order invalidating the first ordinance; rather, the second ordinance was specifically enacted with changes designed to cure the defects in the original ordinance. We agree with the trial court that collateral estoppel does not apply.

### Validity of the Second Housing Preservation Ordinance

█ RCW 82.02.020 precludes cities from levying "any tax, fee, or charge, either direct or indirect . . . on the development, subdivision, classification, or reclassification of land." Furthermore, while Const. art. 7, § 9 and Const. art. 11, § 12 authorize the Legislature to grant municipalities the power under certain conditions to levy taxes, there must be a specific legislative pronouncement allowing for the tax in order for the tax to be valid. *Carkonen v. Williams,* 76 Wn.2d 617, 627, 458 P.2d 280 (1969); *Ivy Club Investors Ltd. Partnership v. Kennewick,* 40 Wn. App. 524, 699 P.2d 782, *review denied,* 104 Wn.2d 1006 (1985). Thus, the central focus of our inquiry is whether the new Housing Preservation Ordinance is a tax.

San Telmo claims that the ordinance imposes a tax because in order to demolish his low income housing, the owner must either make a "contribution" in cash to the low income housing replacement fund, or replace the low income housing with other suitable housing. Either option the owner selects requires a large expenditure of money for the public good, which San Telmo characterizes as a tax.

The City, to the contrary, claims that the ordinance's requirement that the low income housing sought to be

demolished be replaced or a contribution made to the low income housing fund is not a tax. Rather, the City argues that this is merely a regulation on development which is a proper exercise of its police powers.

The question of whether an ordinance is best described as a regulation or a tax is not a novel question. Recently, this court in *Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 650 P.2d 193 (1982) set forth a test which both the City and San Telmo contend distinguishes regulations from taxes. If "the primary purpose of the [ordinance] is to accomplish desired public benefits which cost money . . .'", the ordinance is a tax. *Hillis Homes*, at 809. If "the primary purpose is to regulate" then it is a regulation. *Hillis Homes*, at 809. *See also Haugen v. Gleason*, 226 Or. 99, 359 P.2d 108 (1961).

In *Hillis Homes,* the court invalidated a county's attempt to levy a $250 fee for park fees as a condition of approving new plats. Because the fee was not used for the regulation of plats themselves, but was a tax to "accomplish desired public benefits which cost money . . .", we held the ordinance was invalid. Quite simply, the municipal body cannot shift the social costs of development onto a developer under the guise of a regulation. Such cost shifting is a tax, and absent specific legislative pronouncement, the tax is impermissible and invalid.

The City, however, argues that the ordinance does not require direct payment of money to the City and therefore cannot be characterized as a tax. We disagree. Requiring a developer either to construct low income housing or "contribute" to a fund for such housing gives the developer the option of paying a tax in kind or in money. Furthermore, the payment the owner must make is not being used by the City to regulate the demolition of low income housing units. The City is instead shifting the public responsibility of providing such housing to a limited segment of the population. This shifting is a tax, and pursuant to RCW 82.02.020, it cannot be allowed.

Moreover, we have grave reservations about the City's

ability to impose such a levy under its inherent police powers. The Housing Preservation Ordinance would apparently require San Telmo to either build a new, comparable housing project, or contribute approximately $1.5 million to the low income housing fund. We seriously question whether faced with that potential levy, San Telmo would be in a position to make any profitable use of its property. If not, the ordinance would constitute a taking under Washington Const. art. 1, § 16 (amend. 9). *Granat v. Keasler,* 99 Wn.2d 564, 569, 663 P.2d 830, *cert. denied,* 464 U.S. 1018 (1983).

## CONCLUSION

We sympathize with the problem created by the low income housing shortage in the city of Seattle. However, the City must cure this problem by the lawful exercise of powers granted to it by the constitution and the Legislature. The City can ameliorate this housing shortage by legitimate rezones or, as it has recently done, by passing a multimillion dollar levy on all property owners in Seattle. Nevertheless, the City may not constitutionally pass on the social costs of the development of the downtown Seattle area to current owners of low income housing. The problem must be shared by the entire city, and those who plan to develop their property from low income housing to other uses cannot be penalized by being required to provide more housing.

The trial court's order invalidating the second Housing Preservation Ordinance is affirmed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.