[No. 26675-3-III. Division Three. November 6, 2008.]

PARRELL-SISTERS MHC, LLC, *Appellant*, v. SPOKANE COUNTY, *Respondent*.

*Walter H. Olsen, Jr.*, and *Troy R. Nehring* (of *Olsen Law Firm, PLLC*); and *Philip A. Talmadge* (of *Talmadge/Fitzpatrick*), for appellant.

■■■■■■■■■■

*Steven J. Tucker, Prosecuting Attorney*, and *Ronald P. Arkills, Deputy*, for respondent.

■■■■■■■

¶1 KULIK, J. — Parrell-Sisters MHC, LLC, does business as Pinecroft Mobile Home Park (collectively Pinecroft). Pinecroft is located in the Spokane Valley above a portion of the Spokane Valley-Rathdrum Prairie Aquifer. Pinecroft operates a septic system for the 143 spaces in the park and is not connected to Spokane County's (County) sewage system. In 2006, the County charged Pinecroft a capital facilities rate (CFR) fee of $253,782 as part of the County's sewer construction program. Pinecroft filed this action seeking declaratory relief invalidating the CFR. The trial court granted summary judgment in favor of the County, concluding that the CFR was not barred by RCW 35.67.370 and was a proper regulatory fee. Pinecroft appeals.

¶2 RCW 35.67.370(2) prohibits local governments "from requiring existing mobile home parks to pay a sewer service availability charge, standby charge, consumption charge, or any other similar types of charges associated with available but unused sewer service." The statute's plain language applies to the CFR proposed by the County. We hold that RCW 35.67.370 prohibits the County from charging Pinecroft the CFR. Accordingly, we reverse the trial court's grant of summary judgment to the County and reverse the denial of summary judgment to Pinecroft.

## FACTS

¶3 Pinecroft is a 143-space mobile home park in Spokane County. Pinecroft operates a septic system and is not connected to the County's sewage system. An on-site septic system consists of pipes leading from buildings into an

underground septic tank. Wastewater from the buildings is piped out into the septic tank. When new wastewater is piped into the septic tank, the wastewater already in the tank is flushed into perforated piping in a drain field. The wastewater is then discharged into the soil. This wastewater contains contaminants that must be filtered out as it percolates through the soil.

¶4 Groundwater and soil conditions in the Spokane Valley prevent Pinecroft's contaminated wastewater from being fully treated or filtered before it reaches the Spokane Valley-Rathdrum Prairie Aquifer (Aquifer). The Aquifer is an underground stream of water that is the sole source of drinking water for over 400,000 people in the County. Monitoring by the County has established that 60 percent of the contamination in the Aquifer comes from on-site septic systems. The contamination is usually in the form of nitrates, which can cause health problems.

¶5 In 1981, the County adopted a comprehensive wastewater management plan (CWMP) to protect the Aquifer. This plan included a septic tank elimination program (STEP). The STEP sought to eliminate septic tanks through the construction of neighborhood systems and by requiring properties with functioning septic systems to connect to available County sewer facilities. In 2001, the County adopted a new CWMP that continued the STEP. The County has a policy of limiting and discouraging the use of on-site septic systems. SPOKANE COUNTY CODE (SCC) 8.03.3040(a).

¶6 SCC 8.03.1135 authorizes the imposition of a CFR on properties located in designated sewer construction projects. The CFR is that portion of the monthly sewer charges for property within an individual sewer project that is attributable to the costs of acquiring, constructing, and installing the sewage system. SCC 8.03.1135. The CFR is based on several factors, including (1) annual sewer construction program costs, (2) annual financing costs, (3) an interest component consisting of all interest on bonds sold to finance the annual construction program, and (4) a

general facilities charge. SCC 8.03.1135, .8120, .8250. Each year, the County updates the improvement plan and the CFR. SCC 8.03.8120.

¶7 The CFR for a particular property is determined by multiplying the CFR by the water usage on the property as measured in an equivalent residential unit (ERU). SCC 8.03.1135. In 2004, the County notified Pinecroft that it was subject to the County's 2003 annual sewer construction program. The initial notice indicated that Pinecroft would be charged the CFR. The notice stated that the CFR consisted of two major components: (1) A local construction portion that would assess Pinecroft for its "share of the cost of sewers constructed in the 2003 program" and (2) the general facilities component of "major interceptors, pump stations, and treatment facilities." Clerk's Papers at 306.

¶8 In a letter dated December 10, 2004, the County stated that winter months' water usage would be obtained for each mobile home park, and $4,950 would be charged for every 900 cubic feet per month. The account summary stated that Pinecroft's CFR charge was $409,860. However, in January 2006, the County notified Pinecroft that the payment deadline for the CFR had been extended for an indefinite amount of time while the County reviewed issues concerning CFRs for mobile home parks located within the County's STEP areas. In April, the County informed Pinecroft that payment of the general facilities portion of Pinecroft's CFR was deferred until Pinecroft connected to the County's sewer system. The County recalculated the CFR using the local construction figure. The new CFR charge was $253,782.

¶9 Pinecroft filed this action seeking declaratory relief invalidating the CFR. The parties filed cross-motions for summary judgment. Pinecroft argued that the CFR was barred under RCW 35.67.370. The County argued that the CFR was not barred by RCW 35.67.370 because it was a proper regulatory fee imposed to alleviate Pinecroft's burden on the Aquifer. The court granted the County's motion

for summary judgment and denied Pinecroft's motion. This appeal followed.

## ANALYSIS

¶10 An order of summary judgment is reviewed de novo. This court engages in the same inquiry as the trial court and views the facts in the light most favorable to the nonmoving party. The interpretation of a statute is a question of law that is reviewed de novo. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005).

¶11 "The [CFR] is that portion of the monthly sewer charges for property within an individual sewer project that is attributable to the costs of acquiring, constructing and installing the system of sewerage." SCC 8.03.1135. A "sewer project" refers to "a geographical area designated by the board to receive public sewer improvements that will be financed by or through the county." SCC 8.03.1832.

¶12 The CFR is based on several factors, including annual sewer construction program costs, annual financing costs, an interest component consisting of the interest on bonds sold to finance the annual construction program, and a general facilities charge component. SCC 8.03.1135, .8100, .8250. The CFR charge for a particular property is determined by multiplying the CFR by the water usage on the property measured in an ERU. For existing mobile home parks, one ERU is assigned for each 900 cubic feet of metered water. *See* SCC 8.03.1247. If historical water usage figures were unavailable for a mobile home park, the figure of 0.6 ERU was assigned for each space. The 0.6 figure was based on the 1997 study of water usage in Spokane County mobile home parks. Pinecroft did not provide water usage figures for the mobile home park so the County used 0.6 ERU to determine Pinecroft's CFR.

¶13 Pinecroft contends the CFR is invalid under RCW 35.67.370. The statute reads:

(1) Cities, towns, or counties may not require existing mobile home parks to replace existing, functional septic systems with

a sewer system within the community unless the local board of health determines that the septic system is failing.

(2) Cities, towns, and counties are prohibited from requiring existing mobile home parks to pay *a sewer service availability charge, standby charge, consumption charge, or any other similar types of charges associated with available but unused sewer service,* including any interest or penalties for nonpayment or enforcement charges, until the mobile home park connects to the sewer service. When a mobile home park connects to a sewer, cities, towns, and counties may only charge mobile home parks prospectively from the date of connection for their sewer service. Chapter 297, Laws of 2003 is remedial in nature and applies retroactively to 1993.

RCW 35.67.370 (emphasis added).

¶14 RCW 35.67.370(1) prevents local governments from forcing existing mobile home parks to connect to sewer systems, unless their septic system is failing. RCW 35.67-.370(1) is not applicable here. The County is not forcing Pinecroft to connect to the sewer system.

¶15 The parties disagree over the meaning and application of RCW 35.67.370(2). Pinecroft contends this provision exempts mobile home parks from sewer availability charges, or any similar charge for unused sewer service, as long as the mobile home park has a functioning septic system and is not connected to the sewer. The County maintains that RCW 35.67.370(2) is limited to "charges [for] unused sewer service," but the CFR is used to fund capital facilities and wastewater treatment plant capacity. The County asserts that the CFR charges Pinecroft for the impact of its septic system on the Aquifer, not for unused sewer service.

¶16 "A statute is ambiguous if it is subject to two or more reasonable interpretations." *State v. McGee,* 122 Wn.2d 783, 787, 864 P.2d 912 (1993). "If a statute is plain and unambiguous, its meaning must be primarily derived from the language itself." *Cockle v. Dep't of Labor & Indus.,* 142 Wn.2d 801, 807, 16 P.3d 583 (2001). Where statutory language is clear and plain, statutory construction is un-

necessary because the legislature's intent is based solely on the words in the statute. *See Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 752, 888 P.2d 147 (1995) (quoting *Krystad v. Lau*, 65 Wn.2d 827, 844, 400 P.2d 72 (1965)).

■■ ¶17 RCW 35.67.370(2) is not ambiguous. The plain language of RCW 35.67.370(2) prohibits charges for "available but unused sewer service." The provision lists several charges that are prohibited: "a sewer service availability charge, standby charge, consumption charge," or "any other similar types of charges associated with available but unused sewer service." Because the language of RCW 35-.67.370(2) is not ambiguous, we must discern the meaning of this statute from its language.

¶18 The phrase "any other similar types of charges associated with available but unused sewer service" makes it unnecessary to determine whether the CFR is an unavailability, standby, or consumption charge. All similar charges for unused sewer service for mobile home parks are plainly prohibited. The language is broad and nonexclusive. The County's argument that the CFR is based on Pinecroft's impact on the Aquifer is unpersuasive. While the ultimate benefit from the CFR may be to abate degradation to the Aquifer, nonetheless, the CFR falls within the broad language of the statute prohibiting charges associated with available but unused sewer service.

¶19 We hold that the plain language of RCW 35.67.370(2) prohibits the County from charging Pinecroft with the CFR.

¶20 The County contends for the first time on appeal that RCW 35.67.370 is unconstitutional under article II, section 37 of the Washington Constitution. Under this provision, the text of a new law must set forth the existing statutes the act will revise or amend so citizens are informed what changes will be made if the initiative is enacted. *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 245, 11 P.3d 762 (2000).

■■ ¶21 Generally, an issue may not be raised for the first time on appeal. RAP 2.5(a). However, an exception is

made allowing the consideration of manifest constitutional errors. RAP 2.5(a)(3). An error is manifest if it results in actual prejudice to the litigant. *State v. WWJ Corp.*, 138 Wn.2d 595, 602-03, 980 P.2d 1257 (1999). The error is not manifest if the record from the trial court is insufficient to demonstrate the merits of the constitutional claim. *Id.* at 602. The County has failed to demonstrate the merits of its constitutional claim. Thus, we decline to consider the County's constitutional argument.

¶22 "Washington follows the American rule concerning attorneys' fees and litigation expenses." *Wagner v. Foote*, 128 Wn.2d 408, 416, 908 P.2d 884 (1996). Pinecroft argues that it is entitled to attorney fees under the common fund exception to the American rule on attorney fees in civil cases. Pinecroft relies on *Covell v. City of Seattle*, 127 Wn.2d 874, 905 P.2d 324 (1995).

¶23 In *Covell*, the plaintiffs successfully challenged a street utility fee under article VII, section 1 of the Washington Constitution. *Id.* at 891. The court held that the plaintiffs were entitled to attorney fees under the common fund exception to the American rule on attorney fees in civil cases. The court concluded that the plaintiffs "created a specific monetary fund *and* conferred a substantial benefit on an ascertainable class" by defeating the street utility charge. *Id.* at 892.

¶24 Here, a limited liability company, Parrell-Sisters, does business as Pinecroft Mobile Home Park. Pinecroft did not file this lawsuit as a class action, and there is no fund created or preserved for the common benefit of others. On the record presented here, Pinecroft is not entitled to attorney fees under the common fund rule. *See Pierce County v. State*, 159 Wn.2d 16, 50, 148 P.3d 1002 (2006).

¶25 In conclusion, we hold that the plain language of RCW 35.67.370 prohibits the County from charging Pinecroft with the CFR. Accordingly, we reverse the trial court's grant of summary judgment to the County and reverse the denial of summary judgment to Pinecroft.

SCHULTHEIS, C.J., and BROWN, J., concur.