# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CC-01278-SCT

*MAYOR AND BOARD OF ALDERMEN, CITY OF*
*OCEAN SPRINGS, MISSISSIPPI*

*v.*

*HOMEBUILDERS ASSOCIATION OF*
*MISSISSIPPI, INC., et al.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/24/2004 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | RALPH PRESTON KING, II |
| | ROBERT H. FREILICH |
| | E. TYSON SMITH |
| | JOHN B. EDWARDS, II |
| ATTORNEYS FOR APPELLEES: | STEVEN H. SMITH |
| | BENNY McCALIP "MAC" MAY |
| | ROBERT QUENTIN WHITWELL, JR. |
| | WILLIAM LEE GUICE, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 06/15/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1.     The Mayor and Board of Aldermen of the city of Ocean Springs (collectively "City")

adopted a Comprehensive Plan, which included separate impact fee ordinances which

authorized the assessment, collection, and expenditure of "development impact fees" for

various municipal improvements, services, equipment, and vehicles. In its Development Impact Fee Procedures Ordinance, the City defined a development impact fee as:

> A fee relating to a capital expenditure or service provided by the City which is imposed on new development as a condition of approval of such development as a pre-requisite to obtaining development approval and which is calculated to defray all or a portion of the costs of capital improvements required to accommodate new land development at city-designated level of service standards and which reasonably benefits the new land development.

¶2.     The Home Builders Association of Mississippi, Inc. appeared at three public hearings conducted by the City regarding impact fees. Representatives of the Home Builders repeatedly commented on and protested each of the ordinances, to no avail, as the ordinances were approved by the City. The impact fees were to be paid in addition to any and all other applicable land-use, zoning, planning, adequate public facilities, platting, or other related fees, requirements, standards, and conditions imposed by the City.

¶3.     After the City's adoption of the ordinances, The Home Builders Association of Mississippi, Inc.; Home Builders Associations of the Mississippi Coast, Inc.; Southeast Mississippi Home Builders Association, Inc.; Mississippi Association of Realtors, Inc.; Gulf Properties, Sole Proprietorship; Greg Williams; Kim Williams; Gulf Coast Association of Realtors, Inc.; WRH Properties, Inc.; Singleton Development; Carl B. Hamilton, Inc.; Louis W. Breland; Adams Homes, LLC; Cove Partners, LLC; Troy Vincent Homes, LLC; L.H.F., Inc.; Randall Corp. of Mississippi; James E. Platt; Pierce Blakenship; Gulf Coast Properties, Inc./Secured Mini Storage; Lifestyles 2000, Inc.; Anchor Realty & Development, Inc.; Mangum One, LLC; Charles Carr; and Magnolia State Development Group, LLC

2

(collectively "Appellees")[1] filed a Bill of Exceptions appealing the adoption of the impact fee ordinances. Appellees claimed that the impact fees constituted facial and per se illegal taxes which the City did not have the power to enact. The City filed a Receipt and Addendum to the Bill of Exceptions, objecting to certain alleged facts and law asserted in the Bill of Exceptions.

¶4.    The parties submitted the case to the Jackson County Circuit Court ("Circuit Court"), and after briefing and oral argument, the Circuit Court held the impact fees to be a void taxing measure. By subsequent order, the Circuit Court denied the City's Motion for a Stay and enjoined further collection of impact fees by the City. The City was directed to submit an accounting of fees already collected and a plan for their refund. The City appeals the ruling of the Circuit Court.[2]

### STANDARD OF REVIEW

¶5.    "The appellate court should not determine whether it would adopt the ordinance in question; instead it should determine whether the City's decision to adopt the ordinance is reasonable and supported by substantial evidence." *City of Biloxi v. Hilbert,* 597 So.2d 1276, 1281 (Miss. 1992). "The law is well settled that a decision of the Mayor and Board of Aldermen in such matters will not be disturbed unless the decision was arbitrary, capricious,

---

[1]An amicus brief  was filed in support of the Appellees' cause by the State of Mississippi, through the Attorney General.

[2]Amicus briefs were filed in support of the City's cause by The American Planning Association and the Mississippi Chapter of the American Planning Association; the City of Madison, Mississippi; the Mississippi Association of County Board Attorneys; the City of Ridgeland, Mississippi; and the Mississippi Municipal League, Inc.

discriminatory or beyond the legal authority of the board...."*City of New Albany v. Ray,* 417 So.2d 550, 552 (Miss. 1982) (citations omitted).

¶6.     The Circuit Court found the impact fees were actually taxes, and the ordinances were unconstitutional, *i.e.,* beyond the legal authority of the City. The learned circuit judge opined the issue is one for the Legislature rather than the courts. "On appeal of a trial court judgment rendered subsequent to a bench trial where the judge has sat as the fact-finder, we afford deference to the trial judge." *Chantey Music Pub., Inc. v. Malaco, Inc.,* 915 So.2d 1052, 1055 (Miss. 2005). "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *City of Jackson v. Perry,* 764 So.2d 373, 376 (Miss. 2000). We are required to give deference to the findings of the trial judge unless they are "manifestly wrong or clearly erroneous." *Martin v. Lowery,* 912 So.2d 461, 464 (Miss. 2005) (quoting *Bowers Window & Door Co. v. Dearman,* 549 So.2d 1309, 1312 (Miss. 1989)).

## STATEMENT OF THE FACTS

¶7.     The impact fee ordinances (collectively "Ordinances") adopted by the City established and authorized the procedures for the assessment, collection, and expenditure of impact fees for various public improvements and services.

¶8.     The Ordinances at issue are as follows:

(1)     Development Impact Fee Procedures Ordinance
(2)     General Municipal Facilities Development Impact Fee Ordinance
(3)     Fire Facilities Development Impact Fee Ordinance
(4)     Park and Recreation Facilities Development Impact Fee Ordinance

4

(5)     Police Facilities Development Impact Fee Ordinance
(6)     Major Roadways Development Impact Fee Ordinance
(7)     Water Facilities Development Impact Fee Ordinance

¶9.     In order to establish the necessity and amount of impact fees, the City commissioned a needs study that projected the extent of capital facilities and infrastructure that each new unit of development generates; the level of service required; the projected costs of providing infrastructure per unit of development; and then established impact fees required to be paid, as a condition to development approval, to assure the development's adequate provision for infrastructure. The Preamble to the Procedures Ordinance states, in pertinent part,

> **Whereas** the Board of Aldermen has studied the necessity for and implications of the adoption of development impact fees for public facilities and has prepared a detailed development impact fee calculation methodology for each public facility for which a development impact fee shall be imposed, which calculation methodology shall result in development impact fees which impose upon the fee payor no more than a proportionate share of the costs incurred by the city in providing system improvements to serve the new development; and **Whereas** the City has retained Freilich, Leitner, Carlisle Planning Works, LLC and Kemp Associates, PA, to prepare a development impact fees report, to evaluate existing development impact fees and consider additional development impact fees and has commissioned a development impact fee report; and
> **Whereas** the Board of Aldermen has found the use of development impact fees to be consistent with the Ocean Springs Comprehensive Plan.

¶10.    In conformance with the Development Impact Fees Report, the City considered the following factors in establishing impact fees:

1)      Land use assumptions,
2)      Population projections,
3)      City adopted level of service standards,
4)      City capital improvement plans for each public facility,
5)      City capital improvement cost figures.

5

¶11.   Section 15 of the Procedures Ordinance, which gave the power to the City's Board of Aldermen to make annual adjustments to the fees, stated:

> On July 1, 2004, and on July 1st of each year thereafter in which this Ordinance is in effect, the amount of any development impact fee may be automatically adjusted to account for inflationary increases in the cost of providing public facilities utilizing the most recent 20-city annual national average data from the Engineering News Record Construction Cost Index. The City Clerk shall make the automatic annual adjustment *unless the Board of Aldermen has, in its Annual Review, determined an alternate adjustment.* Nothing herein shall prevent the Aldermen from electing to retain existing development impact fees or from electing to waive the inflation adjustment for any given fiscal year.

(emphasis added).

¶12.   Under Section 16 of the Procedures Ordinance, the City will not approve a final plat or issue a building permit or certificate of occupancy until the applicant demonstrates that all impact fees have been paid to the City.

¶13.   The Development Impact Fees report further states the calculation methodology used by Ocean Springs in the adoption of the ordinances is "not cast in stone" and that "all assumptions and variables are subject to change over time."

¶14.   The City submits that adoption of impact fee ordinances are permissible as a police power measure, and are reasonably authorized by the City's Home Rule authority under Miss. Code Ann. Section 21-17-5; or, in the alternative, by general planning and zoning statutes. The City argues the regulations are reasonably related and roughly proportional to the need generated by the development, and the City submits the impact fee ordinances are reasonable and proportionate to the needs of Ocean Springs.

6

¶15. Appellees contend that the City officials assumed authority in violation of Article 4, Section 80 of the Mississippi Constitution and that regardless of how reasonable the City's fees are, the City was without authority to adopt the fees, and whether the impact fees are reasonably related or roughly proportional to the needs of Ocean Springs is of no import. Appellees argue there exists no Constitutional, statutory or common law authority which authorized the adoption of the development impact fees. Appellees specifically contend Miss. Code Ann. Section 21-17-5 does not bestow authority upon the City to implement impact fees. Finally, appellees argue that if the City were to have authority to implement such fees, all municipalities would be allowed to levy fees or assessments for general public improvements. Plainly stated, Appellees assert the adoption of these fees are beyond the scope of the City's authority.

**ISSUES**

¶16. The parties framed the issues as follows:

I. Whether there is a Mississippi Constitutional provision, state statute or common law which authorizes the lawful adoption and implementation of developmental impact fee ordinances and fees such as those adopted by Ocean Springs or otherwise.

II. If the ordinance was related to police power, whether the adoption of the ordinance authorized under:
(a) The home rule power of the City to enact police power measures in the absence of a prohibitory statutory enactment; and/or
(b) The general planning and zoning statutes.

III. Whether the Circuit Court erred as a matter of law in holding that the City's impact fee ordinance on its face was not a valid exercise of the police power, but an invalid tax.

7

IV. Whether the Appellees estopped and precluded from challenging the City's impact fee ordinance by the consent decree entered in Appellees's suit against the City of Madison in which Appellees authorized the collection of impact fees.

V. Whether the Circuit Court precluded from looking behind the facial validity of the ordinance where the appellants failed to provide any evidence of unreasonableness at the City's hearing adopting the ordinance; and where substantial evidence based on the City's Needs Study, the Comprehensive Plan, the Capital Facilities Element and the City's expert witness demonstrated that the ordinance was reasonable.


**ANALYSIS**

**I.     Whether a Constitutional provision, state statute or the common law authorize the lawful adoption and implementation of impact fees such as those adopted by the City.**

¶17.    The State of Mississippi does not have a specific constitutional provision or statute regarding implementation of development impact fees, nor can authority be found in the common law. This truth has been implicitly, if not explicitly, recognized by the Executive[3] and Legislative branches of state government, and the City. The "Development Impact Fee Report" prepared for the City in 2002, stated, "[w]e believe that the Impact Fee Program reflects the city's needs, will be entirely consistent with the *proposed Mississippi development impact fee enabling legislation....*" (emphasis added). To date, the Mississippi legislature has not adopted a statute authorizing development impact fees or enabling legislation to authorize a city to adopt and implement impact fees.

---

[3]In Governor Haley Barbour's State of the State speech on January 6, 2006, he stated that in the wake of Hurricane Katrina, and in order to benefit Mississippi's lower six counties, "[I] will ask the Legislature to authorize- authorize, not require- impact fees to be assessed by these local governments on new development projects in their communities." Gov. Haley Barbour, State of the State Address (Jan. 6, 2006).

¶18.   There are twenty-seven (27) states which have adopted development impact fee statutes, although five of the states' statutes related exclusively to roads.[4] For the sake of brevity, the specific statutes of each of these states will not be listed herein. However, Section 66-5-211(3) of Tennessee Code Annotated and Section 7-20-4 of the Annotated Code of West Virginia may be deemed analogous and are illustrative of states whose Legislature have adopted impact fee statutes.

¶19.   Tenn. Code Ann. § 66-5-211 (3) states:

"Impact Fee" means a monetary charge imposed by a county or municipal government pursuant to any act of general or local application, to regulate new development on real property. The amount of impact fees are related to the costs resulting from the new development and the revenues for this fee are earmarked for investment in the area of the new development.

¶20.   W. Va. Code § 7-20-4 reads as follows:

County governments affected by the construction of new development projects are hereby authorized to require the payment of fees for any new development projects constructed therein in the event any costs associated with capital improvements or the provision of other services are attributable to such project. Such fees shall not exceed a proportionate share of such costs required to accommodate any such new development. Before requiring payment of any fee authorized hereunder, it must be evident that some reasonable benefit from any such capital improvements will be realized by any such development project.

¶21.   Four additional states have determined, in the absence of specific impact fee legislation, that such fees are otherwise authorized. Courts in Kansas, Wyoming, Florida and Ohio have held that municipalities have the authority to adopt impact fees, even though there

---

[4]The following states have adopted development impact fees: AR, AZ, CA, CO, DE, GA, HI (roads only), ID, IL (roads only), IN, MT, NV, NH, NM, NJ (roads only), PA (roads only), RI, SC, TX, UT, VA (roads only), VT, WV, WA and WI.

is not a specific statute to allow for it. In *McCarthy v. City of Leawood,* 894 P.2d 836, 844 (Kan. 1995), the Kansas Supreme Court held reasonable impact fees may be enacted under that state's constitutionally granted Home Rule authority.[5] In *Home Builders Ass'n of Dayton & Miami Valley v. City of Beavercreek,* 729 N.E.2d 349, 353, 97 A.L.R.5th 657 (Ohio 2000), the Ohio Supreme Court cited its Constitution and held:

> This court has consistently held that Section 3 of Article XVIII, or the Home-Rule Amendment, gives municipalities the authority to impose exactions, provided that the municipality is not statutorily forbidden from doing so, and the exactions meet constitutional standards. The focus here is whether the impact fee ordinance enacted by the city of Beavercreek violates either the United States or Ohio Constitution.

The pertinent section of the Ohio Constitution with which the impact fee must comport is: "[m]unicipality shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary, and other similar regulations, as are not in conflict with general laws." OH. Const. Art. XVIII, § 3.

¶22.    Article IV, Section 80 of the Mississippi Constitution declares, "[p]rovision shall be made by general laws to prevent the abuse by cities, towns, and other municipal corporations of their powers of assessment, taxation, borrowing money, and contracting debts." Appellees argue this provision of the Mississippi Constitution prohibits assessments or taxation, unless there is specific statutory authority allowing the City to do so. In *Adams v. Kuykendall,* 35

---

[5]Article 12, § 5 of the Kansas Constitution, the Cities' Powers of Home Rule, states, in pertinent part:
> (b) Cities are hereby empowered to determine their local affairs and government including the levying of taxes, excises, fees, charges and other exactions except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class....

So. 830, 835 (Miss. 1904), this Court stated, "[w]e hold the taxing power of the sovereign is vested solely in the State and its relinquishment is never to be inferred."

II. **If the ordinance was related to police power, whether the adoption of the ordinance authorized under:**
**(a) The home rule power of the City to enact police power measures in the absence of a prohibitory statutory enactment; and/or**
**(b) The general planning and zoning statutes.**

¶23. In their amicus brief, the American Planning Association and the Mississippi Chapter of the American Planning Association submit the holdings of these foregoing state courts prove specific impact fee legislation is not necessary, claiming, "[a]lthough state enabling authority for impact fees is certainly preferable so that these standards can be uniformly applied, the absence of such enabling authority is not fatal to the validity of a local impact fee program."

¶24. The City argues the authority to adopt impact fees is derived from Mississippi general planning and zoning statutes, as well as Miss. Code Ann. Section 21-17-5, the Home Rule statute. Appellees counter that, "Mississippi municipalities are creatures of the state, and they have only those powers delegated to them by statute," otherwise the City has no legal authority with which to adopt these fees.

¶25. Miss. Code Ann. Section 17-1-11(1)(a) provides, "[t]he governing authority of each municipality and county may provide for the preparation, adoption, amendment, extension and carrying out of a comprehensive plan for the purpose of bringing about coordinated physical development in accordance with present and future needs...." The City argued a Comprehensive Plan was adopted by the City in 2001 and contained, as a condition to

11

development approval, a provision for payment of impact fees. The City argues Miss. Code Ann. Section 17-1-11 grants authority for the City to impose impact fees even absent Home Rule authority.

¶26. Miss. Code Ann. Section 17-1-11 has been interpreted as applying primarily to zoning ordinances enacted by municipalities. *See Woodland Hills Conservation Ass'n v. City of Jackson,* 443 So.2d 1173, 1179 (Miss. 1983),(involving validity of rezoning ordinance which quoted Miss. Code Ann. Section 17-1-11 and emphasized its "future needs" language).

¶27. The Circuit Court found no express grant of authority under the Municipal Planning statutes. We agree. Under the Municipal Planning Statutes, Miss. Code Ann. Section 17-1-1, et. seq., there are no provisions which grant authority to adopt impact fees or other revenue raising mechanisms to implement the City's Comprehensive Plan.

¶28. The City further urges the authority to impose impact fees exists under Miss. Code Ann. Section 21-17-5, commonly known as the Home Rule Statute. The City relies on the language of Section 21-17-5 (1), "[e]xcept as otherwise provided in subsection (2) of this section, the powers granted to governing authorities of municipalities in this section are complete without the existence of or reference to any specific authority granted in any other statute or law of the state of Mississippi" as its authority, and does not require a specific legislative mandate.

¶29. The City argues the Circuit Court erred in relying on cases pre-dating amendments to the Home Rule Statute, including *City of Jackson v. Pittman,* 484 So.2d 998 (Miss. 1986) and *Delta Elec. Power Ass'n v. Miss. Power & Light,* 149 So.2d 504 (Miss. 1963) (citing

12

***Kuykendall,*** 35 So. 830. This Court held in ***Delta***, " [a] municipality in Mississippi is a creature of the state and has only such power and authority as may be granted to it by statute." ***Id.*** at 510. The City argues this holding is inconsistent with the Home Rule Statute, as well as with this Court's holding in ***Nichols v. Patterson,*** 678 So.2d 673, 681 (Miss. 1996), which was decided subsequent to Legislative amendments to the Home Rule Statute. ***Patterson*** holds, "Miss. Code Ann. § 21-17-5, gives municipalities discretion in managing municipal affairs." ***Maynard v. City of Tupelo,*** 691 So.2d 385 (Miss. 1997) was also decided subsequent to the amendments to the Home Rule statute. In ***Maynard,*** this Court held, "the Home Rule statute grants municipalities the right to adopt ordinances with regard to their 'municipal affairs,' but only if said ordinances are not inconsistent with state legislation and/or the Mississippi Constitution." ***Id.*** at 387.

¶30.    The City relies on the Home Rule Statute and argues the foregoing cases grant authority to impose impact fees. In part, we agree. Consistent with our holding in ***Maynard,*** we find that Home Rule authority grants municipalities authority to impose *fees,* as long as the imposition is not inconsistent with legislative mandate or the Mississippi Constitution, and is a fee, as opposed to a tax, as discussed *infra*.

¶31.    We conclude there is no constitutional basis, legislative enactment, or common law doctrine, which empowers cities to adopt and impose development impact fees.

III.    **Whether the Circuit Court erred as a matter of law in holding that the City's impact fee ordinance on its face was not a valid exercise of the City's police power but an invalid tax.**

¶32. The Circuit Court held, "[t]he fact that the City labeled this exaction 'fee' rather than 'tax' is not important; the purpose of the enactment governs over terminology." The City argues that because the impact fees were reasonably related to the infrastructure needs created by new development and the fees were earmarked and deposited into a special fund, the impact fees meet the criteria for fees. Appellees successfully argued before the Circuit Court that the City was utilizing the fees for general municipal purposes and as a revenue-raising mechanism, therefore they were a tax. The United States Supreme Court addressed the distinction between a tax and a fee in *Illinois Cent. R. Co. v. City of Decatur,* 147 U.S. 190, 198-99, 13 S.Ct. 293, 37 L.Ed. 132 (1893) (quoting Cooley on Taxation, pg. 416), and held:

> Special assessments are a peculiar species of taxation, standing apart from the general burdens imposed for state and municipal purposes, and governed by principles that do not apply generally. The general levy of taxes is understood to exact contributions in return for the general benefits of government and it promises nothing to the persons taxed beyond what may be anticipated from an administration of the laws for individual protection and the general public good. Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be especially and peculiarly benefited, in the enhancement of the value of the property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it.

¶33. More recently, the United States Court of Appeals for the Fifth Circuit was called upon to address the distinction between a tax and a fee in *Homebuilders Ass'n of Miss. v. City of Madison, Miss.,* 143 F.3d 1006, 1011 (5th Cir. 1998), and held:

> Workable distinctions emerge from the relevant case law, however: the classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state

14

or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

¶34. The State of Mississippi has adopted similar distinctions stating, "[t]he chief distinction is that a tax is an exaction for public purposes while a fee relates to an individual privilege or benefit to the payer." Miss. Att'y Gen. Op. 1996-0425 (1996) (quoting *United States v. River Coal Co.,* 748 F.2d 1103, 1106 (6th Cir. 1984)).

¶35. Aside from claiming authority from the Home Rule Statute and general zoning and planning powers, the City asserts it may impose impact fees as necessary regulatory fees, under its police power. The City cites *Sweet Home Water & Sewer Ass'n v. Lexington Estates, Ltd.,* 613 So.2d 864 (Miss. 1993), as authority to impose impact fees if they are reasonably proportionate to the amount of need created by the developer.

¶36. In *Sweet Home,* a water and sewer utility was found not to have statutory authority to charge an apartment complex an impact fee for use of the water system, because the Association did not provide a purpose for the fee, or an identification of any increased costs associated with providing service to the complex. *Id.* This Court held, "[w]hile Sweet Home may, under § 19-5-195, assess 'rates, fees, tolls, or charges,' those assessments must be reasonably calculated to provide for the system's functioning and growth." *Id.* at 870.[6]

---

[6]Miss. Code Ann. §19-5-195 states:
The board of commissioners of the district issuing bonds pursuant to Sections 19-5-151 through 19-5-207 shall prescribe and collect reasonable rates, fees, tolls, or charges for the services, facilities and commodities of its system or systems; shall prescribe penalties for the nonpayment thereof; and shall revise such rates, fees, tolls or charges from time to time whenever necessary to insure the economic operation of such system or systems. The rates, fees, tolls

¶37. "Properly understood, regulatory fees are charges to cover the cost of the state's use of its regulatory powers which can be allocated to those who are either voluntarily or involuntarily receiving special attention from government regulators." Hugh Spitzer, *Taxes vs. Fees: A Curious Confusion,* 38 Gonz. L. Rev. 335, 353 (2003) (quoting **Covell v. City of Seattle,** 127 Wash.2d 874, 879, 905 P.2d 324, 327 (1995)). "Such fees cover public expenditures on inspection, record-keeping, and processing, and are correctly limited to the proportionate cost of giving the fee payer that special attention." *Id.* (quoting **Teter v. Clark County**, 104 Wash.2d 227, 234, 704 P.2d 1171, 1177 (Wash. 1985)).

¶38. In its amicus brief, the State of Mississippi submits, "[t]o qualify as a regulatory fee, the impact fees must cover only the administrative expenses of the City in regulating development or be compensation for a specific benefit or service on those paying the impact fees." *See also* **Huston v. Mayo,** 82 So. 334, 335 (Miss. 1919).

¶39. The fees at issue do not qualify as regulatory in nature. These fees cannot be said to cover "administrative expenses" incurred by the City. In order to obtain a building permit, these fees must be paid; however, the fees are not based on the administrative expense the City incurs in issuing the building permit.

---

or charges prescribed shall be, as nearly as possible, such as will always produce revenue at least sufficient to: (a) provide for all expenses of operation and maintenance of the system or systems, including reserves therefor, (b) pay when due all bonds and interest thereon for the payment of which such revenues are shall have been pledged, charged or otherwise encumbered, including reserves therefor, and (c) provide funds for reasonable expansions, extensions and improvements of service.

¶40.    Further, to be regulatory in nature, there must be a specific benefit conferred on the payer of the fee. The Circuit Court found the City's impact fees did not provide any special benefit to the parties paying the fees. The City submits, "[b]enefit is guaranteed by earmarking impact fee revenue in a separate fund from the general fund and restricting the use of impact fee revenue to new infrastructure that will benefit new development." The parties agree the fees were deposited into a separate account from the City's general municipal fund. However, to be determined is whether the developers upon whom the impact fees were imposed were receiving the benefit or if the benefit of the fees was being received by the municipality as a whole.

¶41.    Section 5 of the Procedures Ordinance, states the purpose and intent of the impact fees "is to promote the health, safety, and general welfare of the residents of the City." Section 11 of the Procedures Ordinance, outlines the service area to which the fees would be applied:

> (1) This Ordinance shall apply to all new development within the City. Development impact fees for particular public facilities may apply to less than the entire city. The particular Ordinance adopting each specific development impact fee shall state whether, or the extent to which such development impact fee is applicable to less than the entire city.
> (2) Impact fees imposed by the City, shall, if necessary and appropriate, be collected by other municipalities or by the County on new development within the City's planning area, as indicated in the Comprehensive Plan, but outside of the City limits, pursuant to an intergovernmental agreement which provides that the impact fees collected be transferred to the appropriate City fund for expenditure in accordance with the terms of this Ordinance.

¶42.    The learned trial judge observed, "[t]his is little, if any, assurance that such funds provide a special benefit to the class upon whom the burden is imposed. Simply opening a

special account earmarked for particular city services or facilities is insufficient to provide a 'special' benefit to those utilizing the service or facility."

¶43.   In conjunction with the City's Procedures Ordinance, the six Ordinances were adopted for general municipal purposes, fire department purposes, park and recreation purposes, police department purposes, major roadways and water facility purposes. At a 2002 public hearing, Bruce Peshoff, the principal in the design of the City's impact fees, stated the "first round" of impact fees were being developed for fire, parks and for *general municipal services*.

¶44.   The public services identified in the Ordinances have traditionally been funded by tax revenues. The City is responsible for general municipal services that benefit the City as a whole. The Circuit Court noted such in its opinion:

> [T]he ordinances do exactly that: raise money for ... traditional, general municipal services and facilities normally funded by tax revenues raised by legislatively authorized schemes. If the rationale of the City were sufficient to impliedly vest municipalities with revenue-raising authority by implication, there would cease to be a need for exercising the taxing power of the State. A municipality could classify any exaction as a 'fee' for the provision of services or facilities and evade the Constitutional and Legislative limitations placed upon governing authorities in regard to taxation.

¶45.   Appellees cite the Iowa Supreme Court to best define the distinction between a fee and a tax and argue Iowa law is "almost identical to that of Mississippi's." *See* ***Home Builders Ass'n of Greater Des Moines v. City of West Des Moines,*** 644 N.W.2d 339 (Iowa 2002).

In ***City of West Des Moines,*** a Mandatory Park Dedication Fee Ordinance was challenged. "Specifically, whenever a parcel of land within the City was 'subdivided and presented to the

18

City for residential development purposes, the developer [was] required to make a fee payment of $100.00 per acre." *Id.* at 343. The Ordinance also imposed a fee on residential building permits. The fees generated were to be deposited into a sub-fund of the City's general fund, and according to the Ordinance, "were to be used exclusively for park site acquisition and/or physical improvement of the Neighborhood Park System." *Id.* at 344. A home builder association claimed the park fee was an illegal tax, while West Des Moines claimed the fee was authorized under its Home Rule power. *Id.* at 345.

¶46.    Iowa, like Mississippi, does not have specific statutory authority to enact development impact fees. Municipalities in Iowa were granted Home Rule authority under the Home Rule Amendment to the Iowa Constitution. Under Iowa's Home Rule Amendment, a city "has the power and authority, not inconsistent with the laws of the general assembly, to determine [its] local affairs and government, except that [it does] not have power to levy any tax unless expressly authorized by the general assembly." Iowa Const. Art. III, § 38A. Iowa further addresses Home Rule authority by statute: "[a] city may, except as expressly limited by the Constitution, and if not inconsistent with the laws of the general assembly, exercise any power and perform any function it deems appropriate ... to preserve and improve the peace safety, health, welfare, comfort, and convenience of its residents." Iowa Code Annotated § 364.1.

¶47.    The Iowa Supreme Court declared, "[t]axes are for the primary purpose of raising revenue. If the fee at issue here is determined to be a tax, it would fall within the category of an excise tax- a tax imposed on a transaction or as a condition to the exercise of a

19

privilege." *Id.* at 346 (citations omitted). The Iowa court stated there was no legislative authority allowing the City to impose excise taxes. *Id.* at 347.

¶48. The Iowa Supreme Court then examined the City's authority under its police powers:

A city may charge a fee to cover its administrative expenses in exercising its police power. Thus, the reasonable cost of inspecting, licensing, supervising, or otherwise regulating an activity may be imposed on those engaging in the activity in the form of a license fee, permit fee, or franchise fee. In addition to regulatory fees, a municipality may charge a citizen when it provides a service to that citizen.

*Id.* (citations omitted).

¶49. The Iowa Supreme Court held the impact fee did not qualify as a regulatory fee authorized by the City's police powers as regulatory or service fees, because to qualify as one of these fees, "the parks fee must cover the administrative expenses of the city in regulating residential development or be compensation for a specific benefit or service conferred on those paying the fee." *Id.* at 348.

[The] [fees] were not based on the cost of regulating development or issuing building permits, but rather are based on the impact the development of the property owner's land will have on the public infrastructure. Because the fee has no relation to the expenses of the city in approving subdivision plats or building permits, it cannot be justified as an incident of the exercise of its police powers.

*Id.*

¶50. The Iowa Supreme Court then considered West Des Moines's argument that the monies collected through the park fees were spent solely on the neighborhood parks for the benefit of the developers who have generated this need. *Id.* The Court found this argument to be without merit. The Court stated, "a neighborhood park is not provided specifically to

20

the residents of a development or even the neighborhood in which it is located. A neighborhood park is available for general public use and benefits the entire community."

*Id.*

¶51.    The Iowa Supreme Court held the imposition of the Parks Impact Fee Ordinance was outside the powers granted by the Legislature to municipalities. The Court stated, "[t]he fee is not compensation for a direct service to the developer or homebuilder paying the fee, nor is it intended to cover the administrative costs of the City. To the contrary the fee is, pure and simple, a measure to raise revenue for public infrastructure." *Id.* at 350 (citations omitted).

¶52.    Our sister state, Alabama, was faced with a similar dispute regarding the right to assess property for a benefit conferred when there was no specific legislative authority to do so. Similar to Iowa, the Alabama Supreme Court held, "[t]he power to assess private property for benefits received from local municipal improvements to streets and sewers is a taxing power vested in the legislature and to be exercised by a municipality must be expressly conferred by statute and when so conferred include necessary incidental powers." *Armstrong v. City of Montgomery,* 38 So.2d 862, 863(Ala. 1949).

¶53.    The Iowa and Alabama decisions comport with holdings of our federal courts interpreting Mississippi law in a series of cases involving the city of Madison. The City of Madison ("Madison") adopted impact fee ordinances in 1986. In *Home Builders Ass'n of Mississippi, et. al. v. City of Madison, Miss.,* 10 F.Supp.2d 617 (S.D. Miss. 1997), the plaintiffs brought a 42 U.S.C. § 1983 action challenging a Madison ordinance which required developers to pay a fee at the filing of a preliminary plat for a proposed subdivision, and,

21

once the plat was approved, an additional fee was to be paid in order to obtain a building permit. *Id.* at 619.

¶54.   The U.S. District Court for the Southern District of Mississippi dismissed the case for lack of subject matter jurisdiction over the claim, stating, "[t]here is no showing in the instant case that the City of Madison's impact fees are being used to support administrative or regulatory functions. Furthermore, the impact fee ordinance specifically says that impact fees are to be used for improvements to police and fire departments, streets, and parks-areas of expenditure ordinarily funded by the general revenue of any city. Therefore, in light of the foregoing authority, this court concludes that the impact fee ordinance of the City of Madison imposes a tax for purposes of the Tax Injunction Act." *Id.* at 626. Because the court found the Tax Injunction Act was applicable to the plaintiff's claim, an adequate state remedy could be pursued and the District Court was without subject matter jurisdiction to hear the case. Accordingly, the case was dismissed without prejudice. *Id.* at 619.

¶55.   The plaintiffs appealed the dismissal of the complaint by the District Court in ***Home Builders Ass'n of Miss., et. al. v. City of Madison, Miss.,*** 143 F.3d 1006 (5th Cir. 1998). The Fifth Circuit held, "[i]t is difficult to imagine that an ordinance designed to protect and promote the public health, safety and welfare of an entire community could be characterized as anything but a tax." *Id.* at 1012. The Fifth Circuit affirmed the District Court's ruling, stating the impact fee constituted a tax for purposes of the Tax Injunction Act.

¶56. Madison was then sued by the developers in state court, claiming the Impact Fee Ordinance ("IFO") violated Mississippi law and were an unconstitutional taking. The developers then settled with Madison for $250,000. In a separate agreement, Twin City Fire Insurance, as Madison's insurer, agreed to pay this amount to the developers, while reserving the right to seek recoupment from Madison. *Twin City Fire Insurance v. City of Madison,* 309 F.3d 901, 904 (5th Cir. 2002).

¶57. Twin City filed suit in the aforementioned U.S. District Court, which held the IFO constituted a tax and found no legislative authority for the tax. The district court further found the IFO funds were illegal tax revenues. *Id.*

¶58. The Fifth Circuit agreed with the district court's finding the IFO was an illegal tax that provided Madison with illegal financial gain. The Fifth Circuit further found the Home Rule Statute addressed the limited power of a city to tax, and "under a plain reading of this statute, we reject [Madison's] contention that it had authority to enact an IFO as part of the Home Rule Act." *Id.* at 905. The court additionally held, "[t]he power to levy taxes is not embraced in a general grant of power such as police power. *Pitts v. Mayor of Vicksburg,* 16 So. 418, 419 (1894). Nor will we characterize the impact fees as a regulatory fee rather than a tax, as Madison urges us to do, to avoid application of the plain terms of the Home Rule Act." *Id.*

¶59. It is the opinion of this Court that the Circuit Court in the matter sub judice did not err in holding the City's impact fees constituted an illegal tax. Impact fees are not per se illegal; however, the authority to implement the fees rests with the Legislature.

¶60.   "The county and city are not authorized to impose taxes without direct authorization from the Legislature. Even under home rule provisions ... the city and county are explicitly barred from levying taxes other than those authorized by statute." Miss. Att'y Gen. Op. 1989-124 (1989). In *City of Jackson v. Freeman-Howie, Inc.,* 121 So.2d 120, 123 (Miss. 1960) we held, "[a] city derives its existence and powers by its charter from the State, and can perform the acts for which it has authority thereunder except such as may be in conflict with the Constitution."

## IV.   Whether Appellees are precluded from challenging the City's authority because of the entry of the Consent Judgment in the City of Madison case.

¶61.   "The doctrine of collateral estoppel serves a dual purpose. It protects litigants from the burden of relitigating an identical issue with the same party or his privy. It promotes judicial economy by preventing needless litigation." *Miss. Employment Security Commission v. Philadelphia Mun. Separate School Dist. of Neshoba County,* 437 So.2d 388, 396 (Miss. 1983).

¶62.   As dictated by the rulings of the U.S. District Court and the United States Court of Appeals for the Fifth Circuit, some of the Appellees filed suit in state court, *supra,* against Madison. A settlement agreement and a Consent Judgment were entered in the Madison County Chancery Court.

¶63.   The City asserts that because some Appellees consented to judgment, and that in the settlement, some Appellees admitted that cities in Mississippi have the authority to adopt impact fees if they are reasonable, this admission collaterally estops and precludes Appellees from re-litigating this issue. Appellees counter they did not agree or acknowledge Mississippi

24

municipalities have the lawful authority to adopt impact fees. These suits were predicated upon Madison's 1986 impact fee ordinances and the 1986 ordinances were the basis of the suit. Subsequent to the filing of Appellees' first federal suit, Madison adopted its new ordinances in 1996.

¶64.    Under the doctrine of collateral estoppel, "[an] appellant is precluded from relitigating in the present suit specific questions actually litigated and determined by and essential to the judgment in the prior suit, even though a different cause of action is the subject of the present suit." *Lyle Cashion Co. v. McKendrick,* 87 So.2d 289, 293 (Miss. 1956). Further, "collateral estoppel, unlike the broader question of res judicata, applies only to questions actually litigated in a prior suit, and not to questions which might have been litigated." *Dunaway v. W.H. Hopper & Associates,* 422 So.2d 749, 751 (Miss. 1982) (quoting *Johnson v. Bagby,* 171 So.2d 327 (Miss. 1965)). In *Dunaway,* this Court held the doctrine of collateral estoppel did not apply, as, "[t]here were no factual issue resolved in the [prior] case which are involved in the latter suit." *Id.* at 752.

¶65.    This Court has not been presented with Madison's 1986 or 1996 ordinances. It is not known whether these ordinances mirror those enacted by Ocean Springs. Madison's 1986 impact fee ordinance was the issue of contention, in the City of Madison line of cases. In this case, the issue is the authority of Ocean Springs to adopt *its* impact fee ordinance.

> [T]he doctrine of collateral estoppel must never be seen as anything other than an unusual exception to the general rule that all fact questions should be litigated fully in each case.
> The several predicates to application of the preclusive effect of the doctrine ... are designed to promote substantial judicial and litigant interests. They are also designed to assure substantial reliability in the facts found in the first

proceedings. Where there is room for suspicion regarding the reliability of those first fact findings, collateral estoppel should never be applied.

*Miss. Employment Sec. Comm.*, 437 So.2d at 396.

¶66. Madison's ordinances are not being considered in this matter, but rather, we have been asked to review the propriety of the Ocean Springs ordinances. Furthermore, the parties are not the same, nor do they fall within the definition of parties in privity as enumerated by this Court in *Hogan v. Buckingham,* 730 So.2d 15 (Miss. 1998) (quoting *Little v. V & G Welding Supply, Inc.,* 704 So.2d 1336, 1339 (Miss. 1997)).

¶67. The City's argument that Appellees are precluded from challenging the ordinances because of the consent judgment entered in the City of Madison cases is without merit.

**V.      Whether the Circuit Court precluded from looking behind the facial validity of the ordinance where the appellants failed to provide any evidence of unreasonableness at the City's hearing adopting the ordinance; and where substantial evidence based on the City's Needs Study, the Comprehensive Plan, the Capital Facilities Element and the City's expert witness demonstrated that the ordinance was reasonable.**

¶68. As the other issues were case dispositive, this Court finds Issue V to be moot and declines to address same.

**CONCLUSION**

Courts cannot fault the logic or the foresight that induces the municipality to consider the long term impact of permitted development on municipal resources and public facilities. However, in the absence of legislative intent, municipalities cannot depart from traditionally authorized methods of financing public facilities so as to allocate the costs of substantial public projects among new developments on the basis of their anticipated impact.

8 McQuillin, Municipal Corp.3rd Ed., Rev. 2000, § 25.118.50 at 384.

¶69. While sound argument may be made, especially in the aftermath of Hurricane Katrina, the City is in need of the added revenue impact fees would bring, the ability to assess such fees is a decision for the citizens of this state, either through a constitutional amendment or legislative action.

¶70. Because these fees constitute a tax, the municipality must have enabling legislation in order to levy and collect this tax. The municipality has been given no such authority and in imposing such fees has stepped outside of its authority. Section 2 of the Home Rule Statute, reads: "[u]nless such actions are specifically authorized by another statute or law of the State of Mississippi, this section shall not authorize the governing authorities of a municipality to (a) levy taxes...." Miss. Code Ann. § 21-17-5(2).

¶71. The impact fees constitute a tax because the fees are simply a revenue-raising measure, and the Circuit Court was eminently correct in so holding. Accordingly, the impact fees adopted by the City constitute a tax the municipality has no authority to assess. The decision of the Circuit Court is hereby affirmed.

¶72. **AFFIRMED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, AND DICKINSON, JJ., CONCUR. SMITH, C.J., CONCURS IN RESULT ONLY. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING**.