

2015 SEP 28 AM 9: 17

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SATWANT SINGH, DHALIWAL REAL ESTATE, LLC, dba Victorian Meadows, | ) ) ) ) | No. 72345-6-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) ) | PUBLISHED OPINION |
| v. | ) ) | |
| COVINGTON WATER DISTRICT, a Washington Municipal Agency, | ) ) ) | FILED: September 28, 2015 |
| Respondent. | ) ) ) | |

LEACH, J. — Satwant Singh and Dhaliwal Real Estate LLC (collectively Singh) appeal the trial court's summary dismissal of their lawsuit against the Covington Water District (District). Singh and the District executed two system extension agreements to supply water to Singh's residential real estate development. Singh challenges provisions in the agreements making connection charge deposits nonrefundable. Because the District has the statutory authority to contract for nonrefundable deposits, those deposits do not amount to an illegal tax, and the deposit requirements do not violate public policy, we affirm.

## FACTS

Singh wanted to develop into 30 residential lots property he owned, located within the city of Covington and the Covington Water District service

area. To obtain a building permit, Singh had to provide the city with a water availability certificate. Singh contacted the District to get a certificate.

As the first step to get water service, the District requires a developer to submit a "Water Availability Certificate Application Form." The application provides the District with basic information about the proposed development so the District can determine if it has the ability to serve the development. If the District can provide water service, it issues a certificate indicating the availability of water service and identifying any conditions and/or required improvements for water service. The District calls this certificate a "Water Availability Letter" (WAL).

Before the District will issue a WAL, the applicant must pay a nonrefundable fee of $100 for each "equivalent residential unit." The District calls this fee an "incremental connection charge" and applies it to final connection charges. A WAL expires after one year but can be renewed up to four times.

On May 30, 2005, Singh applied for a WAL and paid $3,000 for the 30 lots he planned to develop. He later decided to develop 31 lots. As a result of renewing and extending the WAL several times, by September 2007, Singh had paid a total of $9,700 in incremental connection charges.

After the District issues a WAL and a developer indicates he is ready to begin work, the District and the developer sign a "System Extension Agreement"

(SEA). This binding contract includes a requirement that the developer construct, within one year, any new water facilities needed for the new development. After completion and approval, the developer transfers the facilities and further obligations, like maintenance, to the District.

On January 11, 2008, Singh applied for and signed a SEA prepared by the District. He paid $15,500 in incremental connection charges, or $500 for each of the 31 lots. When the real estate market collapsed in 2008, Singh stopped work on the project. He did not renew the SEA before it expired. On April 20, 2009, Singh signed another SEA that included the same provisions as the earlier agreement and paid another $15,500 to the District. Near the expiration of the 2009 SEA, Singh requested an extension, paying an additional $1,000 per lot, or $31,000, in incremental connection charges. Finally, in May 2011, Singh requested another extension and paid $3,100 in incremental connection charges. This reflected a reduced fee of $100 per lot charged by the District to assist developers hurt by the poor economy.

In October 2011, Singh told the District that he would abandon the development and asked the District to return the $74,800.00 he paid as incremental connection charges. But because the applications and agreements Singh signed each made all incremental connection charges nonrefundable, the District denied Singh's request. It did refund him $2,516.25, the balance

-3-

remaining in a separate developer receiver account used to pay the administration costs for processing his application and designs. Singh never connected to the District's water system.

The District deposits collected incremental connection charges into a maintenance account held by King County for the District's benefit. At times, the county transfers funds into a separate construction account to pay for District-approved capital improvement projects. Generally, the District pays for capital improvement projects with funds from two sources, water charges paid by current customers and connection fees charged to developers. The District recovers most of its investment in capital improvement projects through connection charges so developers pay for their pro rata share of existing and future capital facilities.

Before Singh informed the District about his proposed project, the District acquired rights to water from the Howard Hanson Dam and began to receive it in 2006. It also started the SE Wax Road/180th Avenue SE Improvement Project, a joint venture with the city of Covington to improve water service to properties in the area. The District completed the project in February 2010.

On September 20, 2013, Singh filed this lawsuit to recover the $74,800 he paid in incremental connection charges. On July 29, 2014, the trial court granted

the District's summary judgment motion, dismissing Singh's lawsuit. Singh appeals.

## STANDARD OF REVIEW

We review a trial court's order on summary judgment de novo, performing the same inquiry as the trial court, viewing all facts and drawing all inferences in favor of the nonmoving party.[1] CR 56(c) requires summary judgment when the pleadings, affidavits, depositions, and admissions on file demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. We review issues of statutory interpretation de novo, with the goal of giving effect to the legislature's intent.[2]

## ANALYSIS

Singh asserts six overlapping, and at times confusing, reasons why the District cannot collect a nonrefundable fee from him. He claims that the District lacks the statutory authority to do this and that it made an arbitrary decision when it adopted its fee policy. He also contends this fee policy reflects an abuse of the District's monopoly power and an unlawful tax. He claims the fee policy violates public policy and provides an unlawful windfall to the District. We disagree.

---

[1] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).
[2] Burns v. City of Seattle, 161 Wn.2d 129, 140, 164 P.3d 475 (2007).

Statutory Authority

First, Singh argues that the District's statutory authority does not include the power to charge nonrefundable incremental connection charges. The District claims that two statutes provide it with this authority.

RCW 57.08.005 provides a water-sewer district with certain described powers. These include charging

> property owners seeking to connect to the district's systems, as a condition to granting the right to so connect, in addition to the cost of the connection, such reasonable connection charge as the board of commissioners shall determine to be proper in order that those property owners shall bear their equitable share of the cost of the system.[3]

RCW 57.22.010 authorizes the District to contract with a property owner for the construction, at the owner's sole expense, of approved extensions when needed to further property development. The contract must contain the conditions required by the district's policies and standard.[4] A district may impose conditions on connection of an extension to the district water system, including "[p]ayment of all required connection charges to the district," "[f]ull compliance with the owner's obligations under such contract and with the district's rules and regulations," and "[p]rovision of sufficient security to the district to ensure completion of the extension and other performance under the contract."[5]

---

[3] RCW 57.08.005(11).
[4] RCW 57.22.010.
[5] RCW 57.22.010(4)-(6).

The District asserts that its rules require nonrefundable incremental connection charges to secure a developer's performance of its contract to build an extension to the water system. Singh offers two responses. First, he contends that the District does not need security after a developer abandons a project before beginning construction because nothing needs to be completed. Second, he asserts that the District's use of these fees to fund capital improvement projects shows that the District does not collect them as security for the cost of completed extension projects. Essentially, Singh contends that the District must refund any part of incremental connection charges collected before connection that the District does not spend to complete a defaulting developer's extension.

Singh cites no authority for his position. Singh admitted in his deposition that the District's charges actually provided him with an incentive to complete the extension. The District notes that making the charges nonrefundable allows it to use the funds when collected to pay for future water facilities needed to accommodate growth. If the District collected a refundable fee, it could not spend it until the risk of refund ended. This would force the District to increase rates for existing customers to pay for expansion because it cannot wait until a developer has completed an extension to begin its own improvements. It needs

to plan, permit, and construct its facilities in an orderly way in anticipation of future growth.

The District also notes that as an alternative to a nonrefundable charge, it could require a performance bond as a condition of an SEA. This would impose an additional expense on the developer. Additionally, a surety providing this bond might require the developer's personal guarantee. The District suggests this would be more financially onerous for developers than its policy. We agree.

The District's fee structure reflects the type of public policy decision the legislature gave water districts the power to make when it provided them broad discretion to establish and collect connection charges. Singh makes no challenge to the amount of the connection fees charged by the District or the time for payment. Absent an express legislative limitation, we conclude that the authority to charge connection fees and require performance security includes the authority to make fees nonrefundable. The District's use of the fees to pay for capital improvements comports with the legislature's approval of an equitable sharing of those costs.

Arbitrary, Capricious, or Unreasonable

Singh next claims the District acted arbitrarily when it required payment of nonrefundable fees. He contends that the District's policy fails to appreciate that a developer may run out of money to complete the project.

When a municipal corporation's action or contract falls within the purpose and object of the enabling statute and where no limitations to the action apply, a court defers to the discretion of the municipal corporation unless the action or contract was arbitrary or capricious or unreasonable.[6]

> "Arbitrary and capricious refers to willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action. Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous."[7]

As we have decided, the District has the authority to require payment of nonrefundable incremental connection fees. Singh offers no persuasive argument why the District's exercise of that authority was unreasonable.

Monopoly

Singh next argues that the District exercised unlawful monopoly power. He claims that the District used this power to include nonnegotiable terms in the SEA, including the nonrefundable incremental connection charges.

But the legislature adopted the Public Water System Coordination Act of 1977, chapter 70.116 RCW. To maximize the efficient and effective development

---

[6] Mun. of Metro. Seattle v. Div. 587, Amalgamated Transit Union, 118 Wn.2d 639, 645-46, 826 P.2d 167 (1992).

[7] Pub. Util. Dist. No. 2 of Pac. County v. Comcast of Wash. IV, Inc., 184 Wn. App. 24, 45, 336 P.3d 65 (2014) (internal quotation marks omitted) (quoting Lane v. Port of Seattle, 178 Wn. App. 110, 126, 316 P.3d 1070 (2013), review denied, 180 Wn.2d 1004 (2014)), review denied, 183 Wn.2d 1015 (2015).

of the state's public water supply, the legislature directed the Department of Health to coordinate the planning of public water systems.[8] As required by the act, public water purveyors engage in coordinated planning efforts to establish future service areas for each purveyor and a coordinated water system plan.[9] The secretary of the Department of Health reviews and approves the plan.[10] Unless the existing water purveyor cannot provide water service, a new public water system purveyor may not operate within the boundary area.[11]

Because the District operates its water supply system under the act's provisions with Department of Health approval, the District did not engage in unlawful monopoly activity.

Fee or Tax

Singh next argues that the District properly charged him an incremental connection charge, but the charge became an unconstitutional tax when Singh defaulted without ever connecting to the water system and the District did not refund Singh the money.

While a municipal government may charge regulatory fees, it must have specific legislative or constitutional authority to tax.[12] In Covell v. City of Seattle[13]

---

[8] RCW 70.116.010.
[9] See RCW 70.116.050.
[10] RCW 70.116.050(7).
[11] RCW 70.116.040; RCW 70.116.060(3)(b).
[12] WASH. CONST. art. VII, § 1; Covell v. City of Seattle, 127 Wn.2d 874, 878-79, 905 P.2d 324 (1995).

the court established a three-part test to decide if a charge is a tax or a fee. This court will find a charge is a permissible regulatory fee only where (1) the primary purpose is to regulate the activity the local government assessed rather than to raise money for public benefits, (2) the local government allocated the collected money exclusively to the authorized regulatory purpose, and (3) a direct relationship exists between the fee charged and the service received by those who pay the fee or between the fee charged and the burden produced by the fee payer.[14]

Applying the first prong of this test, the District charges the fees to secure developers to perform their contracts with the District to pay for capital improvement projects that insure reliable, long-term water resources for all District customers. This equitably shares the burden of the cost of the District's physical system between existing and new customers. Thus, the charge has the primary purpose of securing the continued efficient and effective supply of adequate public water to existing and future customers in the District's service area. Applying the second prong, the charges support the District's authorized regulatory purpose, funding only capital improvement projects to the District's supply system. We apply the third prong. As statutorily required,[15] a direct

---

[13] 127 Wn.2d 874, 879, 905 P.2d 324 (1995).
[14] Covell, 127 Wn.2d at 879.
[15] RCW 57.08.005(11).

relationship exists between the amount of the charges and the benefits and burdens involved with new connection. Thus, a nonrefundable incremental connection charge, even when no connection occurs, constitutes a fee and not a tax. Singh's argument fails.

Public Policy

Singh contends that the District's fee policy violates public policy because it is nonnegotiable and allows the District to keep funds that it did not earn. A court will not enforce terms of a contract where public policy outweighs the interest in their enforcement.[16] But, "'[i]n general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy.'"[17] We look to see if the contract has a "'tendency to evil,'" is against the public good, or is injurious to the public.[18] The District has statutory authority to regulate the water supply service within its boundaries and to include terms in connection agreements to secure a developer's completion of an extension project and other obligations.[19] Singh

---

[16] LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 48, 85, 331 P.3d 1147 (2014).

[17] LK Operating, 181 Wn.2d at 85 (internal quotation marks omitted) (quoting State Farm Gen. Ins. Co. v. Emerson, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984)).

[18] Viking Properties, Inc. v. Holm, 155 Wn.2d 112, 126, 118 P.3d 322 (2005) (quoting Thayer v. Thompson, 36 Wn. App. 794, 796, 677 P.2d 787 (1984)).

[19] RCW 57.08.005(3); RCW 57.22.010(6).

cites no authority, nor does the record show, that the District's policy tended toward evil, harmed the public good, or injured the public. Rather, the nonrefundable incremental connection charge, directly supported by public policy, allows the District to maintain and fund adequate water supply projects, benefiting the people within the District's boundaries.

Consideration

Singh argues that the District provided no consideration for the $74,800 Singh paid in incremental connection charges. "'A traditional bilateral contract is formed by the exchange of reciprocal promises. The promise of each party is consideration supporting the promise of the other.'"[20] In the SEA, the District promised to provide water to Singh's property and maintain the completed extension. Singh promised to build the extension and pay connection charges, as stated in the contract. Because the parties exchanged reciprocal promises, adequate consideration existed for the SEA.

Windfall

Finally, Singh contends that because a third party will develop the same property after Singh's default, the District will receive a windfall because it will also collect nonrefundable incremental connection charges from that party.

---

[20] Duncan v. Alaska USA Fed. Credit Union, Inc., 148 Wn. App. 52, 74, 199 P.3d 991 (2008) (quoting Govier v. N. Sound Bank, 91 Wn. App. 493, 499, 957 P.2d 811 (1998)).

Because the District had authority to impose nonrefundable charges and Singh's delay and breach caused his loss of $74,800 in nonrefunded charges, Singh's windfall argument fails.

## CONCLUSION

Because the District had statutory authority to charge nonrefundable incremental connection fees, did not act unlawfully in adopting and applying its fee policy, and entered into an enforceable contract with Singh, the trial court properly granted the District summary judgment. We affirm.

_Leach, J._

WE CONCUR:

_Cox, J._