**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

TONI TARDIF, an individual,

Appellant,

v.

BELLEVUE COLLEGE, a
Washington public community
college; TERRY HATCHER, an
individual; LENI KARR, an individual,

Respondents.

DIVISION ONE

No. 82802-9-I

UNPUBLISHED OPINION

DWYER, J. — While enrolled as a student at Bellevue College, Toni Tardif submitted an altered version of her instructor's written evaluation of her performance in a clinical practicum course. Tardif now appeals from the trial court's summary judgment dismissal of her lawsuit against Bellevue College and two of its faculty members arising from administrative disciplinary proceedings addressing her actions. The trial court did not err by granting summary judgment. Accordingly, we affirm.

I

Toni Tardif enrolled in Bellevue College's DUTEC (Diagnostic Ultrasound Technology) program in 2016.[1] The DUTEC program offers two years of

---

[1] Diagnostic Ultrasound Technology uses energy in the form of ultrasound to diagnose pathology and assess fetal well-being.

academic and clinical proficiency training in ultrasound patient services and related diagnostic techniques. The first year takes place primarily in the classroom. In the second year, clinical proficiency programs occur at hospitals throughout the area. The second year consists of two sections (known as "first rotation" and "second rotation"). Once students reach the necessary level of competency during the first rotation, they move to the second rotation. The DUTEC 240 Clinical Practicum is designed to help students demonstrate that they have become capable of performing accurate diagnostic studies on patients without direct supervision by the time they have completed their training and are ready to graduate.

In September 2017, Tardif commenced her clinical instruction and training at Providence St. Peters Hospital in Olympia. Tardif's performance during the first quarter was unsatisfactory, and it became necessary for her to continue her clinical training at a different location. In February 2018, three weeks after the second quarter had already started, Tardif resumed her clinical training at St. Anthony Hospital in Gig Harbor. Tardif's performance improved and, by May 2018, she had attained a first rotation competency level. Because Tardif needed more time to reach the skill level needed to graduate, her clinical supervisors agreed to extend her program completion date to December 2018 if necessary.

Jenny McBroom, supervisor of the ultrasound department at Seattle Children's Hospital, offered Tardif a staff position contingent on her graduation from the DUTEC program. Tardif had informed McBroom that she was on track and scheduled to graduate at the end of summer quarter 2018. Tardif's initial

start date in August 2018 was deferred until September 2018 as she was not yet ready to be released for graduation.

On September 6, 2018, Tardif met with clinical instructor Lital Solomon to review and discuss Solomon's final evaluation of her performance in DUTEC 240. Prior to the meeting, Solomon had scanned and e-mailed a partially completed version of Tardif's evaluation to DUTEC clinical coordinator Leni Karr. The evaluation included Solomon's conclusion that "Toni's competency level is conditional due to the fact that Jenny McBroom has agreed to continue the training of Toni for a period of 3 to 6 months if needed."[2] Solomon's assessment of Tardif's competency level as conditional "meant that she had not yet demonstrated the level of skill necessary to successfully start working with patients independently without close supervision," as required to complete her clinical program and pass DUTEC 240.

During the meeting between Tardif and Solomon, Tardif was upset about this statement and insisted that Solomon delete it. Solomon refused to do so, explaining that "it reflected my professional opinion which I was obligated to provide." Solomon suggested that Tardif take the evaluation home and think about it overnight, but Tardif did not want to stop the discussion even after Solomon stated that she needed to leave. Solomon had nothing else to add, so she said "whatever" and left. Tardif altered the evaluation form by using white-out correction fluid to remove the unwanted statement. Tardif then signed the altered evaluation, scanned it, and e-mailed it to Solomon.

---

[2] According to McBroom, Seattle Children's Hospital provides ongoing professional training for its technicians, which is significantly different from clinical instruction for students.

The following day, Solomon asked Tardif whether there was anything more she wished to discuss before Solomon submitted the final evaluation form to Bellevue College. Tardif replied that she did not have any additional comments and that she was happy with her final grade. Solomon was surprised but relieved that Tardif appeared to have accepted her evaluation. Solomon forwarded the altered evaluation via e-mail to Karr and to Terry Hatcher, chair of the DUTEC program. Karr then telephoned Solomon to discuss the evaluation. During the course of their conversation, Karr and Solomon discovered that Solomon's statement regarding Tardif's conditional competency was missing from the version of the evaluation that Tardif had signed.

On September 13, 2018, Karr, Hatcher, and Leslie Heizer Newquist[3] met with Tardif to ask for her understanding of what had occurred. Tardif initially denied that she had altered the evaluation. When Tardif was asked to produce the original document showing that Solomon's comment had been whited out, she admitted that she did it but claimed that Solomon was present and had authorized her to do so. A few days later, Tardif sent apology e-mails acknowledging that altering the evaluation was "fundamentally the wrong process to get comments changed" and that she was "willing to accept the consequences of [her] actions."

On September 10, 2018, Tardif started working as an ultrasonographer at Seattle Children's Hospital. McBroom thought that Tardif had graduated from DUTEC. One week later, Hatcher informed McBroom that Tardif had not yet

---

[3] Leslie Heizer Newquist serves as Bellevue College's Dean of the Health Sciences, Education and Wellness Institute.

finished her clinical instruction and had not yet graduated. McBroom promptly terminated Tardif's employment on the ground that she had not graduated and therefore did not meet the minimum qualifications of the position.

II

On September 17, 2018, Karr submitted an Academic Dishonesty Report to Bellevue College's Office of Student Conduct alleging that Tardif had submitted an altered final evaluation for her DUTEC 240 course. Megan Kaptik, acting in her capacity as Manager of Student Conduct, initiated a disciplinary action against Tardif by issuing a Notice of Student Conduct Allegations pursuant to Bellevue College's Student Conduct Code. On September 21, Kaptik met with Tardif and her "support person" for a disciplinary meeting to discuss the allegations, hear her response, and review possible consequences. Tardif explained her actions by claiming that when Solomon said "whatever," and got up to leave, Tardif "thought that was an indication that I could white it out" and that Solomon "saw me whiting it out as she was packing up." However, at a follow-up meeting on September 27, Solomon denied authorizing Tardif to alter the evaluation and confirmed that she was unaware that this had occurred until she spoke with Karr on September 7.

On October 1, 2018, Kaptik issued a letter of discipline finding Tardif responsible for violating three provisions of the Bellevue Student Code: (1) Academic Dishonesty - Fabrication, in violation of WAC 132H-125-030(1)(c); (2) Other Dishonesty, in violation of WAC 132H-125-030(2)(a); and (3) Ethics

Violation, in violation of WAC 132H-125-030(20).[4]  Kaptic sanctioned Tardif with disciplinary probation until July 1, 2019 and a deferred disciplinary sanction of one quarter.  The letter of discipline notified Tardif of her right to appeal the disciplinary action with Bellevue College's conduct review officer within 21 days of the decision.

On October 21, 2018, Tardif timely appealed the disciplinary sanction, thereby triggering a Brief Adjudicative Proceeding (BAP).  On November 5, Dr. Kristen Jones, Bellevue College's Provost for Academic and Student Affairs, conducted the BAP in her capacity as Conduct Review Officer and issued a written decision on November 16.  Dr. Jones upheld Kaptic's determination that Tardif violated WAC 132H-125-030(2)(a), which prohibits acts of dishonesty including "alteration . . . of any college document."  Dr. Jones concluded that

> by ending the conversation with "whatever," Solomon indicated to Respondent that the issues Respondent had raised about the Note were not important to her.  This expression of indifference toward issues related to the Note, however, cannot reasonably be interpreted as Solomon granting Respondent permission to remove the Note.

Dr. Jones also noted that Tardif acknowledged that her action was "a violation of [Bellevue College] and program rules."  However, Dr. Jones found Tardif not responsible for Academic Dishonesty – Fabrication in violation of WAC 132H-125-030(1)(c) and Ethics Violation WAC 132H-125-030(20).  Based on these determinations, Dr. Jones voided Kaptic's original sanction and instead

---

[4] Bellevue College Student Conduct Code, chapter 132H-125, was repealed effective January 17, 2019, and recodified as chapter 132H-126.

imposed a written reprimand stating that "continuation of the same or similar behavior may result in more severe disciplinary action."

Tardif appealed the BAP decision to Bellevue College President Girard Weber on December 6, 2018. Because he did not respond within 20 days, the appeal was deemed denied pursuant to WAC 132H-125-250(4). Nevertheless, on February 19, 2019, President Weber notified Tardif that he saw "no reason to overturn" the decision. The notice informed Tardif that she could appeal Bellevue College's disciplinary decision in superior court by filing a petition for judicial review. Tardif did not do so.

III

As a result of her misconduct, Tardif received a failing grade in DUTEC 240. In a letter to Tardif dated October 2, 2018, Hatcher noted that Tardif had "altered [her] final evaluation" and that "the outcome for cheating is a zero on that evaluation." Because "[f]ailing a course or cheating, is grounds for dismissal," Hatcher dismissed Tardif from the DUTEC Program.

Tardif formally initiated a grade dispute procedure by appealing her DUTEC 240 failing grade with Dean Newquist. On January 28, 2019, Newquist issued a written decision pursuant to Bellevue College's Student Dispute Resolution Procedure stating that she did not find a sufficient basis to override the failing grade. Newquist noted that her investigation of the matter corroborated Dr. Jones's findings and conclusions that Tardif's "unauthorized alteration of the document constitutes a submission of a falsified college

7

document" and that her failing grade was "not arbitrary and capricious or unlawful."

Tardif appealed Dean Newquist's decision to the Student Academic Grievance Committee (SAGC). After meeting with Tardif, Karr, and Kaptic on March 12, 2019, the SAGC issued Recommendations and Findings of Fact. The SAGC found that Tardif committed "Academic Dishonesty – Fabrication"[5] and that she violated the "Legal, Moral and Ethical Behavior and Cheating Policy" of the DUTEC Student Handbook Policy. The SAGC recommended that Tardif's failing grade should stand. However, noting that Solomon's evaluation was incomplete when she gave it to Tardif, the SAGC recommended invalidating her dismissal from the DUTEC program and giving her an opportunity to complete her training provided that she comply with certain conditions.

As the final step in the academic grievance procedure, Dr. Jones reviewed the SAGC's Recommendations and Findings of Fact. On March 28, 2019, after considering Tardif's complaint, supporting statements, and other correspondence and materials related to her appeal, Dr. Jones issued a written decision stating that she agreed with the SAGC's recommendations.

In June 2019, Hatcher e-mailed Tardif to ask whether she was ready to begin her retraining. Tardif did not respond. On January 21, 2020, Tardif filed a lawsuit against Bellevue College, Hatcher, and Karr (collectively Bellevue College). Tardif pleaded claims of breach of contract, tortious interference with a

---

[5] The SAGC incorrectly stated that Dr. Jones concluded that Tardif was responsible for a violation of "Academic Dishonesty-Fabrication." In fact, Jones determined that Tardif was responsible for a violation of "Other Dishonesty."

contract, and negligence. Bellevue College thereafter moved for summary judgment. On June 3, 2021, the trial court granted summary judgment in favor of Bellevue College and dismissed all of Tardif's claims. The order of dismissal specified that collateral estoppel precluded relitigation of Bellevue College's final decisions in Tardif's disciplinary and grade dispute appeals. On August 5, 2021, the trial court granted Tardif's motion for entry of judgment regarding the defendants' cost bill and entered judgment against Tardif. Tardif appeals.

IV

Tardif first argues that the trial court erred in concluding that collateral estoppel barred relitigation of the factual issues underlying Bellevue College's disciplinary and grade dispute decisions. We disagree, and conclude that summary judgment dismissal was proper on this basis.

"We review summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We will affirm a summary judgment order only "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Woods View II, LLC v. Kitsap County, 188 Wn. App. 1, 18, 352 P.3d 807 (2015). We also review de novo whether collateral estoppel bars relitigation of a particular issue. LeMond v. Dep't of Licensing, 143 Wn. App. 797, 803, 180 P.3d 829 (2008).

"The doctrine of collateral estoppel is well known to Washington law as a means of preventing the endless relitigation of issues already actually litigated by

the parties and decided by a competent tribunal." Reninger v. Dep't of Corr., 134 Wn.2d 437, 449, 951 P.2d 782 (1998). Courts often apply collateral estoppel when an issue was adjudicated by an administrative agency in an earlier proceeding. Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 307, 96 P.3d 957 (2004). The party asserting collateral estoppel must establish that "(1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied." Christensen, 152 Wn.2d at 307. "'Washington courts focus on whether the parties to the earlier proceeding had a full and fair hearing on the issue.'" Hadley v. Maxwell, 144 Wn.2d 306, 311, 27 P.3d 600 (2001) (quoting Neff v. Allstate Ins. Co., 70 Wn. App. 796, 801, 855 P.2d 1223 (1993)). In considering whether collateral estoppel applies to an administrative decision, we additionally consider "'(1) whether the agency acting within its competence made a factual decision; (2) agency and court procedural differences; and (3) policy considerations.'" Shoemaker v. City of Bremerton, 109 Wn.2d 504, 508, 745 P.2d 858 (1987) (quoting State v. Dupard, 93 Wn.2d 268, 275, 609 P.2d 961 (1980)).

Tardif argues that the first factor is not present herein because her complaint for money damages is entirely distinct from the disciplinary and grade matters addressed in Bellevue College's administrative proceedings. To the

10

contrary, regardless of the relief sought, Tardif's complaint turns on factual issues that were decided in the prior proceedings: (1) whether Bellevue College improperly saddled her with additional course and graduation requirements by determining that her competency level was conditioned on additional clinical training and (2) whether she had permission to alter her evaluation. The first factor applies.

As to the second factor, Tardif argues that there was no final judgment on the merits because Bellevue College was not acting in a judicial capacity and the parties did not have an opportunity to litigate.[6] She emphasizes the relative informality of Bellevue College's administrative proceedings as compared to litigation in a court of law. However, Bellevue College is an "agency" and its administrative proceedings are defined as "adjudicative proceedings." RCW 34.05.010(1), (2). These proceedings afforded Tardif the essence of due process—notice, an opportunity to be heard, and multiple levels of appellate review. Tardif was allowed to have an attorney (although she apparently chose not to), call witnesses, submit documents, and ask questions. The final decisions were rendered by professionals acting within their competence who applied established codes and procedures and issued written findings and conclusions. And because Tardif did not seek judicial review of these orders, even after being notified of its availability, they became the final resolution of the factual issues addressed therein.

---

[6] Tardif does not dispute that the parties were in privity.

Regarding the fourth factor, Tardif argues that applying collateral estoppel will work an injustice because it will deny her the opportunity to litigate in court. Addressing this standard requires us to "consider whether 'the party against whom the estoppel is asserted [had] interests at stake that would call for a full litigational effort.'" Weaver v. City of Everett, 4 Wn. App. 2d 303, 421 P.3d 1013 (2018) (alteration in original) (quoting 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE, CIVIL § 373, at 763 (5th ed. 1996)), aff'd, 194 Wn.2d 464, 450 P.3d 177 (2019).

Our Supreme Court's opinion in Weaver v. City of Everett, 194 Wn.2d 464, 450 P.3d 177 (2019), is instructive. In Weaver, a firefighter contracted melanoma and filed an application for temporary disability benefits for the five weeks of work he missed while recovering from surgery. His claim consisted solely of $10,000 in lost wages. Weaver, 194 Wn.2d at 469. The Department of Labor and Industries found that the melanoma was not work related and denied the claim. Weaver, 194 Wn.2d at 470. Weaver appealed to the Industrial Insurance Appeals Board. An administrative law judge (ALJ) affirmed the Department's denial of Weaver's claim, and the Board denied Weaver's petition for review. Weaver, 194 Wn.2d at 470.

Three years later, after the melanoma at issue in his first claim had spread to his brain, Weaver filed a permanent disability claim seeking pension benefits worth over $2 million, which the Department denied. Weaver, 194 Wn.2d at 471. On appeal, the ALJ concluded that the claim was precluded by collateral estoppel, the Board denied Weaver's petition for review, and the superior court

affirmed. This court reversed, and our Supreme Court agreed, holding that collateral estoppel "would work an injustice and contravene public policy" because "the substantial disparity of relief between Weaver's temporary and permanent disability claims kept Weaver from fully and vigorously litigating the issue at the temporary disability claim stage." Weaver, 194 Wn.2d at 473.

Unlike in Weaver, the significant interest at stake herein—her academic and professional standing—remained the same in both proceedings.[7] Bellevue College's administrative proceedings afforded Tardif the opportunity to litigate the issue of whether extraneous requirements were imposed upon her and whether she had permission to alter the evaluation. She had sufficient motivation to do so. Tardif unilaterally decided not to seek judicial review of these orders. Applying collateral estoppel at this point does not work an injustice. Tardif could have sought judicial review. She did not. It was her own decision to deny herself her "day in court." She cannot now relitigate the settled issues in this lawsuit.

V

Tardif additionally contends that genuine issues of material fact preclude summary judgment dismissal of her claims for breach of contract, tortious interference with a contract, and negligence. We disagree.

A

To prevail in a breach of contract action, "the plaintiff must prove that a valid agreement existed between the parties, the agreement was breached, and

---

[7] Unlike the claimant in the Weaver matter, who faced payment of expert witness bills in an amount greatly exceeding the initial $10,000 claim amount, 4 Wn. App. 2d at 310 n.2, Tardif did not face huge out-of-pocket expenses in order to pursue her claim of administrative error.

13

the plaintiff was damaged." Univ. of Wash. v. Gov't Emps. Ins. Co., 200 Wn. App. 455, 467, 404 P.3d 559 (2017). Tardif's breach of contract claim alleged that "Bellevue College materially breached its agreement with [her] by adding course requirements that were not in the student handbook, course catalog, course syllabus, or any other written document forming the contract between the parties." This is so, she contends, because Hatcher and Karr "added a three to six months training program from Seattle Children's Hospital as a condition to [her] final evaluation and course DUTEC 240."

But Tardif has not shown the existence of a genuine issue of material fact regarding Solomon's determination that her competency level was "conditional" because "she had not yet demonstrated the level of skill necessary to successfully start working with patients independently without close supervision," as required to complete her clinical program and pass DUTEC 240. Bellevue College did not owe Tardif a contractual duty to permit her to graduate without her achieving the minimum required level of clinical competency. Rather than imposing an additional requirement, Bellevue College determined that Tardif needed more time to meet established program requirements. Tardif's claim fails.

B

Tardif next argues that the trial court erred in dismissing her tortious interference claim. To establish tortious interference with a contractual relationship or business expectancy, a plaintiff must prove five elements: "'(1) [T]he existence of a valid contractual relationship or business expectancy; (2)

14

that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.'" Tacoma Auto Mall, Inc. v. Nissan N. Am., 169 Wn. App. 111, 132, 279 P.3d 487 (2012) (alteration in original) (quoting Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 157, 930 P.2d 288 (1997)).

Tardif argues that Bellevue College intentionally and improperly interfered with her valid contractual expectancy in employment at Seattle Children's Hospital. This is so, she contends, because she met the standards of academic performance established in the published course descriptions and syllabus, and Bellevue College acted arbitrarily and capriciously by making her ability to pass DUTEC 240 conditional upon further training by her employer.

Courts may consider arbitrary and capricious actions as evidence of improper means. Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 773, 436 P.3d 397 (2019). "'Arbitrary and capricious refers to willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action.'" Greensun, 7 Wn. App. 2d at 774 (internal quotation marks omitted) (quoting Singh v. Covington Water Dist., 190 Wn. App. 416, 424, 359 P.3d 947 (2015)). Solomon's determination that Tardif needed more time and practice to achieve the level of clinical competency needed to graduate was not improper. Also not improper was Hatcher's decision to assign Tardif a failing grade in DUTEC 240 based on her misconduct. Tardif

did not graduate, and therefore did not meet the minimum qualifications of the job, because of her own actions.

C

Tardif next argues that genuine issues of material fact preclude summary judgment on her negligence claim. "A negligence claim requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." Behla v. R.J. Jung, LLC, 11 Wn. App. 2d 329, 334, 453 P.3d 729 (2019). Whether a duty exists is a question of law. Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996).

Tardif asserts that Bellevue College breached its duty by failing to protect her from "academic evaluation that is arbitrary, prejudiced, or capricious" pursuant to WAC 132H-126-020(1)(c). She claims that this breach resulted from the imposition of extra course requirements that were not imposed on other students. As previously discussed, Tardif presents no evidence that Bellevue College imposed additional course requirements. Rather, she needed additional time to complete established graduation requirements. More fundamentally, the proximate cause of Tardif's alleged damages was her own misconduct in altering the evaluation. This claim also fails.

Affirmed.

_Duyn, J._

16

No. 82802-9-I/17

WE CONCUR:

_Brennan, J_  _Andrus, C.J._